UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSEMARY PATTERSON

VERSUS

EAST BATON ROUGE
PARISH SCHOOL BOARD
AND STEPHANIE TATE

CIVIL ACTION

NO. 09-774-JVP-SCR

## RULING ON MOTION TO DISMISS

This matter is before the court on a motion by defendants, East Baton Rouge Parish School Board and Stephanie Tate, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 6). Plaintiff, Rosemary Patterson, has opposed the motion (doc. 9) and defendants have filed a reply to the opposition (doc. 12). Jurisdiction is based on 28 U.S.C. 1331 and 28 U.S.C. 1367. A hearing on the motion was held on January 28, 2010.

## BACKGROUND

Plaintiff is a teacher employed by the East Baton Rouge Parish School Board. She alleges that she was injured on the job on March 6, 2008, and that the injuries sustained in that incident have necessitated ongoing medical treatment which includes the use of coumadin and other medications. According to the complaint, defendants, the East Baton Rouge Parish School Board, and her school principal, Stephanie Tate, were aware of her injuries, disability, and medications when she was released to return to work in August of 2008, but nevertheless

assigned to her class a student with a history of repeated violence in the classroom. Despite plaintiff's request that the student be reassigned, or that she, Rosemary Patterson, be transferred to another school, the student remained in plaintiff's class and attacked her on three different occasions, leading to more requests for transfers.

According to the complaint, the student again attacked plaintiff on September 18, 2008, kicking and punching her and striking her on the head, causing severe injuries from which she is still disabled and for which she is still receiving medical treatment.  After the incident, a risk management official representing the School Board told plaintiff that she had to be tested for drugs at an occupational medicine clinic chosen by the School Board.  Plaintiff alleges that, after she objected to the testing, the School Board official told her that the drug test would be administered at the discretion of the school principal, Stephanie Tate.

Plaintiff's complaint also alleges that the school secretary, after talking with the School Board official and meeting with Tate, informed plaintiff that she would be taken to Total Occupational Medicine Clinic to be tested for alcohol and drugs. Plaintiff alleges that defendants had no reasonable suspicion that she was under the influence of, or had any problems with, alcohol or drugs at the time of her injury. Plaintiff further alleges that the test was administered pursuant to a School Board policy described by the School Board's Employee Safety Handbook and the Worker's Compensation Packet.

2

Plaintiff claims that she was denied her right to due process and was subjected to an unreasonable search in violation of her rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff claims that she suffered humiliation, embarrassment, and emotional distress as a result of the testing, and she seeks compensation for those damages pursuant to 42 U.S.C. §1983. She also seeks punitive damages, attorneys' fees, and court costs.

Plaintiff asserts that, given the attacking student's known history of violence and plaintiff's known susceptibility to trauma, it was substantially certain that the student would attack her and cause serious injury if assigned to her class. Plaintiff, therefore, claims that defendants breached their duty to provide a reasonably safe place for her to work and are liable for the damages that resulted from the attack, including medical expenses, loss of income, loss of earning capacity, pain and suffering, and loss of enjoyment of life "for intentionally breaching this duty."

Plaintiff also alleges that, despite her treating physician's determination that she was disabled as a result of the September 18, 2009 attack, the School Board has indicated through an agent that plaintiff's "assault pay" would be terminated as of September 18, 2009. Plaintiff demands that the School Board continue to provide sick leave without reduction in pay and without reduction in accrued sick leave days until she is determined to no longer be disabled and demands that any "assault pay" wrongfully denied her be paid with accrued interest.

Defendants filed the present motion to dismiss on November 11, 2009. Defendants argue that: (1) plaintiff has failed to allege that her consent to the drug test was coerced; (2) the School Board cannot be held liable for the allegedly discretionary decision of defendant, Stephanie Tate; (3) plaintiff has failed to demonstrate that defendant, Tate, does not have qualified immunity; (4) plaintiff has failed to state a cause of action for an intentional tort; and (5) plaintiff's "assault pay" claim had not accrued when the complaint was filed and was therefore not ripe for adjudication (doc. 12).

## LAW AND ARGUMENT

In determining whether a plaintiff has stated a claim sufficient to avoid dismissal under Rule 12(b)(6), the well-pleaded facts alleged in her complaint are accepted as true and the allegations are construed in the light most favorable to her. *Arias-Benn v. State Farm Fire & Casualty Insurance Co.*, 495 F.3d 228, 230 (5th Cir. 2007); *Milofsky v. American Airlines, Inc.*, 404 F.3d 338, 341 (5th Cir. 2005). The court does not look beyond the face of the pleadings when determining whether a plaintiff has stated a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Nevertheless, the court does not accept conclusory allegations, unwarranted factual inferences or legal conclusions as true. *Central Laborer's Pension Fund. v. Integrated Electrical Services, Inc.*, 497 F.3d 546, 550 (5th Cir. 2007). A complaint warrants dismissal if it "fail[s] *in toto* to render plaintiff's entitlement to relief

plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S 544,127 S.Ct. 1955, n. 14, 167 L.Ed.2d 929 (2007).

**Whether Coerced Consent is Alleged**

Defendants argue that plaintiff "not only fails to allege any direct threat of adverse consequences by her employer, she fails to even allege the existence of such consequences in her complaint" (doc. 12, p. 3). The complaint, however, alleges that the drug test was administered pursuant to the policy, practice and/or custom of East Baton Rouge Parish School Board (Complaint, ¶ 10). The Louisiana State Supreme Court has stated that "teachers may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy." *Howard v. West Baton Rouge Parish School Bd.*, 793 So.2d 153, 156 (La.2001) (quoting, *Coleman v. Orleans Parish School Bd.*, 688 So.2d 1312, 1316 (La.App. 4 Cir. 1997, *writ denied*, 692 So.2d 1087 (La.1997)).

Accordingly, if, as plaintiff alleges in the complaint, the test was administered pursuant to School Board policy and/or she was ordered to take the test, then her refusal to take the test could reasonably have rendered her subject to dismissal for willful neglect of duty. As defendants have noted, coercion my be found when "the public employee has a subjective belief, objectively reasonable under the circumstances, that she will suffer adverse consequences as a result of refusing to waiver [sic] her constitutional rights." (Doc. 12, p. 2 (citing *McKinley v. City of*

*Mansfield*, 404 F.3d 418, 436, n. 20 (6th Cir. 2005)).[1]  Therefore, accepting the well-pleaded facts alleged in her complaint as true and construing all allegations in the light most favorable to her, the court finds that plaintiff has met her burden of alleging facts that render a finding of coercion plausible.

**Whether the Complaint Mandates a Dismissal of the School Board**

Though the complaint alleges that testing was done pursuant to School Board policy, the School Board argues that it should be dismissed because the complaint also alleges that "Tate was granted unfettered discretion to require Patterson to take a drug test" (doc. 12, p. 5).  The complaint, however, actually alleges that a School Board official *told* plaintiff that drug testing would be at the discretion of her principal (Complaint, ¶ 8).  Moreover, to the extent that the complaint may be read to suggest that Tate may have had unfettered discretion in the matter, alternative claims may be set forth in a complaint regardless of consistency.  *See,* Fed.R.Civ.P. 8(d)(2) &(3).  Those claims must be construed by the court so as to do justice.  Fed.R.Civ.P. 8(e).

Accordingly, accepting the well-pleaded facts alleged in the complaint as true and construing the allegations in the light most favorable to plaintiff the court finds no merit in defendants' argument that the petition fails to allege facts to support a claim under 42 U.S.C. §1983 against the East Baton Rouge Parish School Board.

---

[1] The court in *McKinley* also declined to require proof that the plaintiff reasonably believed he would be fired, stating "although job termination is surely a 'substantial penalty,' so, too, are other employer actions, such as ordering a demotion or suspension."  404 F.3d at 436, n. 20.

**Whether Defendant, Stephanie Tate, Is Entitled to Qualified Immunity**

For a right to be clearly established such that qualified immunity is inapplicable, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  "Officials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be put on notice that their conduct is unlawful.'" *Id.* at 393 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)). "The court's focus, for purposes of the 'clearly established' analysis should be on 'fair warning': qualified immunity is unavailable 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Hope v.* Pelzer*,* 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

Plaintiff argues that *United Teachers of New Orleans v. Orleans Parish School Board*, 142 F.3d 853 (5th Cir. 1998), clearly establishes her right to be free from suspicionless drug and alcohol testing under the circumstances alleged.  In *United Teachers*, the Fifth Circuit Court of Appeals found that school board policies that required drug testing of employees injured in the course of their employment violated the Fourth Amendment.  The court stated that no special needs exception

to the requirement of individualized suspicion applied; the testing did not respond to any identified problem of drug use by employees; and an insufficient nexus existed between injury and drug use.

In support of their argument that the circuits are split on the issue of suspicionless drug testing of teachers, thus precluding a finding that plaintiff's right to be free of this type of suspicionless testing is clearly established, defendants cite *Knox County Educ. Assoc. v. Knox County Bd. of Education*, 158 F.3d 361 (6th Cir. 1998).[2] *Knox*, however, involved suspicionless testing only of employees applying for, or transferring to, safety sensitive positions. Such a policy is not at issue in the present case.

The policies at issue in *United Teachers,* however, mandated suspicionless testing of school board employees who were injured on the job even if their positions were not safety sensitive. In concluding that the policies could not stand, the court in *United Teachers* noted that "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *United Teachers*, 142 F.3d at 856 (quoting *Chandler v.*

---

[2]Defendants cite *McClendon v. City of Columbia*, 239 F.3d 366 (5th Cir. 2002) (*en banc), cert. denied,* 537 U.S. 1232, 123 S.Ct. 1355, 155 L.Ed.2d 196 (2003), and *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 196 (2003) (holding that a division of opinion among the circuits precludes a constitutional rule from being "clearly established" for purposes of qualified immunity). (Doc. 12, p. 6).

*Miller*, 520 U.S. 305, 314 117 S.Ct. 1295, 1301, 137 L.Ed.2d 513 (1989) (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602. 624, 109 S.Ct. 1402, 1417, 103 L.Ed.2d 639 (1989)).  However, in addressing whether the testing of employees who were injured in the course of employment furthered an important government interest, the court stated:

> "[W]orkers chosen for testing are simultaneously under inclusive and overinclusive, remarkably so.  The bite is underinclusive because only persons injured in the course of employment are to be tested.  It is overinclusive because all persons injured are tested, not just persons injured under circumstances suggesting their fault.  Stated another way, there is an insufficient nexus between suffering an injury at work and drug impairment.  The school boards have not shown that their rules are responsive to an identified problem in drug use by teachers, teachers' aids, or clerical workers.  Regardless, their general interest in a drug-free school environment is not served by these rules.
> That the triggering event for testing is any injury-producing incident is no quirk or inept rulemaking.  To the contrary, the rules appear to do precisely what they were intended to do; support the state's generalized interest in not paying compensation claims of employees whose injury was caused by drug use.  Under the Louisiana worker's compensation scheme intoxication is a defense to a claim.  A claimant refusing "drug and alcohol testing" faces a presumption that must be overcome to be awarded benefits. LA.Rev. Stat. § 49:1015.

*United Teachers*, 142, F.3d at 856-857.

   The complaint alleges that plaintiff's drug test was administered pursuant to virtually identical criteria—the test was administered simply because plaintiff was

injured on the job.  Of all the cases cited by the parties, only *United Teachers* addresses that specific criteria for suspicionless testing of teachers, and, as the court in *United Teachers* makes clear, there is an insufficient nexus between merely suffering an injury at work and drug impairment.  Rather than furthering any important governmental interest, rules that require drug and alcohol testing of every employee injured at work "appear to do precisely what they were intended to do; support the state's generalized interest in not paying compensation claims of employees whose injur[ies were] caused by drug use."[3]

The court concludes that *United Teachers*, clearly establishes the applicable law for purposes of qualified immunity, and that the plaintiff has met her burden of demonstrating that qualified immunity does not apply in this case.

**Whether the Complaint States a Claim for an Intentional Tort**

Under Louisiana's workers' compensation law, workers' compensation benefits are generally the exclusive remedy for injuries arising out of and in the course of their employment.  LSA–R.S. §23:1032.  An exception to this exclusivity of remedies exists, however, for employee injuries "resulting from an intentional act."  LSA–R.S. §23:1032(B).

Plaintiff argues that the complaint states an intentional tort claim against the School Board so as to fall within that exception to the exclusivity of remedies

---

[3] The court also notes that, according to paragraph 10 of the complaint, the criteria for administering suspicionless alcohol and drug testing is stated in the School Board's Workers' Compensation Packet.

otherwise provided by Louisiana's Workers' Compensation law.  Plaintiff does not argue that the School Board actually intended her harm, but contends that the intent element of the tort is satisfied because the facts alleged in the complaint demonstrate that the School Board was substantially certain that injury would result if the student remained in her classroom.  See e.g., *Bazley v. Tortorich*, 397 So.2d 475, 482 (La.1981) (stating that, in the context of intentional torts, "the meaning of intent, . . . is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did").

In support of that position plaintiff notes that the complaint alleges that the School Board: (1) knew she was "especially susceptible to traumatic injury," (2) knew that the student who attacked her had a history of violence in the classroom, and (3) had been informed that the student had attacked her on three occasions prior to the September 18, 2008 attack.  Plaintiff argues that defendants failed to provide her with a reasonably safe place to work and are therefore liable to her for damages resulting from the attack.

However, "mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing."  *Reeves v. Structural Preservation Systems*, 731 So.2d 208, 213 (La.1999) (quoting *Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So.2d 1140, 1142 (La.App. 4 Cir. 1993), *writ denied*, 629 So.2d 347 (La.1993)). "'Substantially certain to follow' requires more than a reasonable probability that an

injury will occur and 'certain' has been defined to mean 'inevitable' or incapable of failing." *Id.* (quoting *Armistead*, 618 So.2d at 1142). "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Id.,* at 212.

"The purpose of the intentional act exception is to prevent a person granted immunity, who intentionally inflicts an injury on an employee, from using the immunity to protect himself against the consequences of his own willful misconduct." *Reeder v. Laks Corp.*, 555 So.2d 7, 10 (La.App. 1 Cir. 1989), *writ denied*, 559 So.2d 142 (La.1990). "[T]he legislature did not intend to subject the employer to a tort suit by the injured employee and hold the employer liable for the intentional acts of third parties who are not listed in the statute and not employees of the company." *Id.* "These types of work-related injuries are the very accidents covered by the worker's compensation statute." *Id.*

Though injury may have been reasonably foreseeable under the facts alleged in plaintiff's complaint, the facts do not establish a claim that falls within the intentional tort exception to workers' compensation immunity. Because theMarch 23, 2010.complaint fails to state an intentional tort claim under which relief may be granted under Louisiana law, the motion to dismiss shall be granted insofar as it seeks dismissal of the intentional tort claims asserted in the complaint. This court

agrees that this result is harsh under the facts of this case, but the relief plaintiff seeks must come from the legislature.

**Plaintiff's Claim for "Assault Pay"**

Defendants note that plaintiff has asserted claims against both defendants for assault pay, but argue that the claims should be dismissed because: (1) defendant, Tate, is not plaintiff's employer, and (2) the claim for damages had not accrued when the complaint was filed and is therefore not ripe for adjudication.

The court finds merit in defendants' argument and notes that plaintiff did not address the motion to dismiss insofar as it relates to her claim for assault pay. Accordingly the motion to dismiss shall be granted insofar as defendants seek dismissal of plaintiff's claim for "assault pay."

## CONCLUSION

For the foregoing reasons, the motion by defendants, East Baton Rouge Parish School Board and Stephanie Tate, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 6), is hereby **GRANTED**, insofar as the motion seeks dismissal of plaintiff's intentional tort and assault pay claims. The motion is hereby **DENIED** in all other respects.

Signed in Baton Rouge, Louisiana, on March 23, 2010.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**